UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA D. DELGADO, | ) | No. ED CV 05-01096-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | (Social Security Case) |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner ("AR"). The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified AR. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

Plaintiff asserts as her first issue that the Administrative Law

Judge ("ALJ") did not properly consider the disability opinion of her treating physician, Dr. Enge.  The record contains treatment notes of Dr. Enge, a physician associated with the Department of Behavioral Health of San Bernardino County. (See, generally, AR at 136-156.) Plaintiff believes that the ALJ should have given credence to Dr. Enge's diagnosis that she suffers from Reactive Attachment Disorder ("RAD"), depressed with psychosis. (See AR at 167.)  Indeed, the ALJ in his Decision noted that the treatment records of the San Bernardino Department of Behavioral Health and the Phoenix Clinic reveal a series of failures to appear for scheduled appointments, a history of noncompliance with prescribed treatment, a purpose of coming to the mental health clinic to assist in her appeal for Supplemental Security Income benefits, and a notation that when Plaintiff is compliant with her medication, she felt better. (AR at 12.)

Much of what Plaintiff claims to be diagnostic impressions of Dr. Enge or other providers at the Department of Behavioral Health instead appear to be notations made by staff based almost entirely on subjective reporting by Plaintiff.  For example, in the Joint Stipulation ("JS"), Plaintiff asserts that on January 2, 2004, Dr. Enge noted that she was tearful, agitated, and had exhibited other similar symptoms. (JS at 3, citing AR 167.)  In fact, it is clear that the notations from which Plaintiff quotes are nothing more than her own report to Dr. Enge of how she felt before she came into the clinic.  Dr. Enge did not observe these symptoms.

The ALJ relied heavily on the report of a psychiatric consultative examination ("CE") from Dr. Smith, performed on October 21, 2003 at the request of the Department of Social Security Disability and Adult Programs. (AR 123-131, 12-13.)  The ALJ fairly

2

summarized Dr. Smith's report, which described an extensive examination, and reported the psychiatrist's conclusions that Plaintiff was malingering, dishonest in her reporting, and almost entirely lacked credibility:

> "This patient was not credible in any of her claims. She was very intent on providing what appeared to be 'rehearsed' symptoms. She complained of symptoms that are not actually associated with psychiatric disorders that are often claimed by lay people who are attempting to feign a psychiatric disorder, for instance voices 'in my head,' tactile, and olfactory hallucinations, etc. There was no objective evidence of her claims."

(AR 129-130.)

The State Agency Physicians made specific note of both the treatment records of Dr. Enge, and Dr. Smith's report, and determined to give weight to Dr. Smith's report "as it is very thorough and not inconsistent with Dr. Enge's notes." (AR 133.) The ALJ remarked on these findings. As a legal matter, it cannot be considered that Dr. Enge's conclusion is uncontradicted, and the ALJ is not under an obligation to provide clear and convincing reasons for rejecting it. See Powell v. Chater, 959 F.Supp. 1238, 1244 (C.D. Cal. 1997). Instead, the standard is whether there are specific and legitimate reasons contained within the ALJ's opinion supporting rejection of the treating physician's opinion. See Lester v. Chater, 81 F.3d 821 (9th

Cir. 1996).[1]

Plaintiff also claims that the ALJ ignored Dr. Enge's assessment of Plaintiff's global assessment of functioning ("GAF") score of 43/47, made on July 25, 2003. (JS at 4, AR at 150.) This Court has observed, in previous written opinions, that parties in Social Security litigation often misutilize GAF scores for their own purposes. It is not uncommon in a case in which a GAF score is high that the Commissioner will argue that the high score demonstrates a lack of impairment or disability. Conversely, when the score is low, the plaintiff will often argue that it is indicative of disability or impairment, while the Commissioner will argue that the GAF score is not relevant to determination of impairment or disability. The latter scenario appears in this case. For that reason, the Court will undertake a brief discussion of the relevance of GAF scores.

As suggested in the Commissioner's portion of the JS, the Commissioner has determined that GAF scores are intended to be used for clinical diagnosis and treatment, and do not directly correlate to the severity assessment set forth in Social Security regulations. (See JS at 7, citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), and American Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders, Text Revision</u> 33 (4th Ed. 2000).

---

[1] Dr. Enge's notation that Plaintiff may suffer from "reactive attachment disorder" would appear to be, at the least, incomplete. According to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR), the appropriate diagnosis is "reactive attachment disorder of infancy or early childhood," which is descriptive of conditions of children, not adults.

4

1       The applicable regulations governing Social Security cases, and
2  in particular, the evaluation of psychiatric impairments, are set
3  forth in 20 C.F.R. §404.1520a(e)(1) and §416.920a(e)(1), and require,
4  among other things, consideration of activities of daily living;
5  social functioning; concentration, persistence, or pace; and episodes
6  of decompensation.  These sections utilize a five-category scale
7  (never, seldom, often, frequent, and constant) for the first three of
8  these four functional areas, including the effect of a claimant's
9  mental deficiencies on concentration, persistence or pace. An ALJ's
10 decision must incorporate pertinent findings and conclusions based on
11 the Psychiatric Review Technique Form ("PRTF"), which is no longer
12 required to be completed by the ALJ; however, the ALJ's Decision in
13 finding an impairment must include a specific finding as to the degree
14 of limitation in each of the four functional areas described in the
15 regulation.
16      It is apparent that the GAF scale has an entirely different
17 purpose, and in fact does not logically correlate well with the
18 regulations.  Moreover, the GAF scale is intended to reflect a
19 person's overall level of functioning at or about the time of the
20 examination, not for a period of at least 12 consecutive months, which
21 is required for a finding of impairment or disability. (See 20 C.F.R.
22 §§416.905, 416.920(c)(2006).)  The relevance of this in Plaintiff's
23 case appears in the fact that Dr. Smith assessed her with a current
24 GAF of 75 on October 21, 2003, while Dr. Enge purported to assess a
25 GAF of 43/47 just a few months earlier, on July 25, 2003.  Finally,
26 the Court notes that many of the symptoms which Plaintiff describes as
27 being reported in her charts, such as fearfulness, agitation, crying,
28 and the like, are reflective of a point in time when she was caring

for her husband, who was dying of cancer, and in fact expired in March of 2004. (See, for example, January 2, 2004 notes of Dr. Enge, at AR 167.)

For the foregoing reasons, the Court determines that Plaintiff's first issue has no merit.

Plaintiff's second issue, in which she asserts that the ALJ did not properly consider the opinion of her treating psychologist, Dr. Havert, is related to her first issue, and will be discussed within this section. Plaintiff points to an intake interview by Dr. Havert of Plaintiff at the San Bernardino County Department of Behavioral Health, signed off by Dr. Havert on July 7, 2003. (AR 151-153.) The Court does not view these notes as the product of a treating relationship, or any objective testing; rather, they are nothing more than intake notes and impressions. These notes also appear to be largely based on Plaintiff's own self-reporting, which is also evident in the notes. In any event, the ALJ was entitled to rely upon Dr. Smith's comprehensive examination in assessing that Plaintiff did not suffer from a mental impairment. Nothing in Dr. Havert's notes supports an argument that the ALJ erred in finding no mental impairment.

In her third issue, Plaintiff asserts that the ALJ did not properly consider side effects of her medications. Plaintiff's argument would appear to be that the ALJ should have independently considered the textbook list of possible side effects of various medications. (See JS at 12.) This is not the ALJ's responsibility; rather, it is a claimant's responsibility at this stage of the evaluation process to demonstrate that there are side effects which actually occur in the claimant's case. Potential side effects of

6

drugs are not relevant, because many drugs have potential side effects, but these same drugs do not always have actual side effects. Moreover, Plaintiff's main complaint, that she heard voices in her head and could not sleep, which she asserted at the hearing before the ALJ (AR 183), was effectively decimated by Dr. Smith, who found them to be without credibility, and inconsistent with a true psychiatric condition.

In her fourth issue, Plaintiff asserts that the ALJ erred in finding that she did not have a severe mental condition. This subject has been extensively discussed by the Court already in this Opinion. It is essentially duplicative of Plaintiff's first and second issues, and therefore, does not require significant additional discussion. Plaintiff again argues that her GAF score as determined by Dr. Enge is relevant, but that matter has already been exhaustively considered by the Court in discussing Plaintiff's other issues. She also reargues her contention that the ALJ improperly ignored the assessment of Dr. Havert, but as the Court has observed, these were notes made by Dr. Havert at the time of Plaintiff's intake, and cannot reasonably be considered a diagnostic opinion. Finally, as the Court has again already noted, the ALJ was entitled to rely upon the opinion of the consultative examiner, Dr. Smith, who performed an exhaustive examination, and came up with no diagnosis on either Axis I or Axis II.

Finally, Plaintiff's last issue asserts that the ALJ failed to properly develop the record. In particular, Plaintiff argues that the ALJ should have obtained additional records from Phoenix Clinic which, she says, would have demonstrated that she was treated for a bipolar disorder from June 2001 to October 2002. (JS at 18.)

The record does not support Plaintiff's argument. Plaintiff's current attorneys, before the hearing before the ALJ, sent the ALJ medical records which were identified as being from the Phoenix Clinic. (AR 158-167.) At the hearing, there was no suggestion from Plaintiff's attorneys that any Phoenix Clinic records were missing, and as the Commissioner points out, the attorneys did not ask the ALJ to leave the record open until additional missing records were located. There is absolutely no evidence that the ALJ failed in his duty to develop the record, a duty which only exists when there is some evidence that records exist, but are missing, which would provide significant and relevant information pertaining to an impairment or a disability. There is absolutely no such evidence in this case.

For the foregoing reasons, the decision of the Commissioner will be affirmed and the matter will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED:  September 15, 2006

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE